### *In re* LANGTRY.

#### (*Circuit Court, D. California.* July 19, 1887.)

NATURALIZATION OF ALIENS—TAKING DECLARATION AT PRIVATE RESIDENCE.
　　The clerk of the United States circuit court has no authority to take from an alien a declaration of his intention to become a citizen of the United States at the private residence of the party, and for that purpose to carry the records of the court from the clerk's office to such residence.

In the circuit court of the United States for the district of California, declarations by aliens of their intention to become citizens of the United States are contained in bound volumes, which constitute records of the court. Printed forms of declaration, with blanks to be filled with the name of the applicant and of the country of which he is a citizen, or of whose ruler he is a subject, are bound in the volume, and are filled up and used as applications are made. On the twenty-eighth of June, 1887, Emilie Charlotte Langtry, a subject of the queen of Great Britain, made application to become a citizen of the United States, and one of these volumes, of which one-third of the blanks had been used and constituted the original declarations of intention of the different applicants, was taken from the clerk's office at San Francisco by a deputy-clerk, and carried to the private residence of Mrs. Langtry in the city, and there her declaration was made and oath taken before the deputy-clerk. This fact coming to the knowledge of Mr. Justice FIELD, of the United States supreme court, then holding with Circuit Judge SAWYER the circuit court at San Francisco, the following proceedings were had in the circuit court on the nineteenth of July, 1887.

FIELD, Circuit Justice, addressing Mr. Barnes, a counselor of the circuit court, inquired whether he was counsel for Mrs. Langtry. Mr. Barnes replied that he was not such counsel, although he had given her advice as to making a declaration to become a citizen. The justice then said that

his attention had been called to the fact that Mrs. Langtry's declaration had been taken at her residence in this city, and not at the clerk's office, and that for that purpose the records of the court, in which such declarations are entered, had been carried by the deputy-clerk to her rooms; and that great doubt existed in his mind as to the legality of the declaration thus made. He did not think that the statutes furnished any authority for the clerk of the court to take a declaration of one to become a citizen out of his (the clerk's) office, except in open court, and for that purpose to carry the records of the court to the private residence of the party. To permit the proceeding to pass without comment would be to establish a dangerous precedent, and one calculated to give rise to gross abuses. The justice observed that to be an American citizen was a great privilege; that citizenship should be regarded as a sacred trust; and that persons seeking to take upon themselves its responsibilities ought to consider it of sufficient value to attend where the records of the court are held in proper legal custody. In some states, a man is allowed to vote as soon as he makes his declaration of intention to become a citizen; and if the clerk of the court, or his deputy, can go around the country taking declarations of intention and administering oaths, it is evident that dangerous consequences might follow, especially as there is no limit to the number of deputies which a clerk may appoint. At one time the statutes required the person making a declaration of intention to do so in open court; but in 1876 congress passed a law authorizing the declaration to be make before the clerk, but it could not have contemplated the granting of authority to clerks to remove records from the proper place of their custody for the accommodation of parties. 19 St. 2, c. 5.

Mr. Barnes stated, in reply, that in the case of Mrs. Barrios, widow of President Barrios, of Guatemala, the records had been taken from the court to the hotel where the lady was stopping.

Justice FIELD was not aware of the fact, and stated that the precedent was a bad one, and should not be followed. The justice suggested to Mr. Barnes that he should inform Mrs. Langtry of the doubt expressed by the court of the legality of her declaration, and to inform her that she could remove that doubt by repeating the declaration before the clerk of the court at his office, or before the court. Mr. Barnes replied that he would act upon the suggestion.

NOTE BY THE COURT. It is stated in the public journals that Mrs. Langtry is not a *feme sole*, and that her husband is living in England, and a subject of the queen. If this be so, the question will arise, on her application for final naturalization papers, whether she can be naturalized in this country. No person can be a citizen of two countries; and a wife is by law a citizen of her husband's country.